**LOCAL 201, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, James T. Leonard and Austin W. Brewin**

v.

**GENERAL ELECTRIC COMPANY.**

Civ. A. No. 57–336.

United States District Court
D. Massachusetts.

May 19, 1958.

---

3. There was no physical damage to the lot or the cottage.

742

Albert L. Goldman, Boston, Mass., for plaintiffs.

Warren F. Farr, Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, in which plaintiff union seeks an order directing defendant to arbitrate an alleged grievance and a declaration that the grievance raises an arbitrable issue.

There is in effect a National Agreement entered into in 1955 between defendant company and the international union and its locals covering the bargaining unit at defendant's West Lynn plant of which plaintiff local is the certified bargaining agent. In October 1956 there were two men employed within that unit on thermocouple jobs on the second shift,—Graciale, who had worked within the unit for six years, and Looney, who had worked for the company for fifteen years as a guard in a bargaining unit represented by another union, had left the employ of the company in June 1956 for reasons of health and had been rehired for the thermocouple job in August 1956. In October a reduction in force took place as a result of which Graciale was transferred to a similar job on the first shift, Looney remaining on the second shift.

The union filed a grievance on behalf of Graciale, contending that because he had longer service than Looney within the bargaining unit, he should be given his choice of shifts. The grievance was fully processed through the various steps provided in Article XIII of the agreement and remained unsettled. Article XV of the National Agreement, covering arbitration of grievances, has the following pertinent provisions:

"Article XV

"Arbitration

"1. Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Article XIII, and which involves either,

"(a) the interpretation or application of a provision of this Agreement

\*    \*    \*    \*    \*    \*

shall be submitted to arbitration upon written request of either the Union or the Company   \*   \*   \*.

"2.   (a) Within 10 days following a written request for arbitration of a grievance, the Company or the Union may request the American Arbitration Association to submit a Panel of names from which an arbitrator may be chosen.

\*    \*    \*    \*    \*    \*

"(b) It is further expressly understood and agreed that the American Arbitration Association shall have no authority to process a request for arbitration or appoint an arbitrator if either party shall advise the Association that such request arises under Section 1(a) of this Article, but that the grievance desired to be arbitrated does not, in its opinion, raise an arbitrable issue.   In such event, the Association shall have authority to process a request for arbitration and appoint an arbitrator in accordance with its rules only after a final judgment of a Court has determined that the grievance upon which arbitration has been requested raises arbitrable issues and has directed arbitration of such issues.   \*   \*   \*"

The union here has duly requested arbitration of the grievance and has requested the American Arbitration Association to proceed in accordance with its rules for the selection of an arbitrator and the defendant has by letter advised the Association under Article XV 2(b) that the grievance does not raise an arbitrable issue.

The sole issue here is whether the grievance does raise an arbitrable issue.   This is a question which Article XV 2(b) leaves to the determination of this court, and this court must, of course, find that there is an arbitrable issue before it can order the parties to proceed

to arbitration.   Local No. 149 of American Federation of Technical Engineers (A.F.L.) v. General Electric Company, 1. Cir., 250 F.2d 922, 927.

It is the contention of the plaintiff union that the grievance does raise an issue as to the interpretation and application of Article XI of the National Agreement, pertinent provisions of which read as follows:

"Article XI

"Reduction or Increase In Forces

"1.   Whenever there is a reduction in the working force or employees are laid off from their regular jobs, total length of continuous service, applied on a plant, department, or other basis as negotiated locally, shall be the major factor determining the employees to be laid off or transferred (exclusive of upgrading or transfers to higher rated jobs).   However, ability will be given consideration.

\*    \*    \*    \*    \*    \*

"2.   Since the number of employees in the individual bargaining units covered under this Agreement varies from less than 50 to more than 10,000 each Local shall negotiate with local Management a written Agreement covering the layoff and rehiring procedure for the employees represented by the Local.

"3.   Employees who have been or who may be transferred to jobs outside the bargaining units, may be returned to their former classification in the bargaining unit in accordance with their total length of continuous service.   Employees in any plant who have been certified in a bargaining unit not covered by this Agreement shall have no rights under this Agreement."

The union argues that under Article XI, Graciale, by virtue of his six years of service within the bargaining unit, had seniority over Looney, who had worked only a few months within the unit, and consequently was entitled to choose to remain on the second shift, and

·that the defendant by retaining Looney ·on the second shift gave recognition to seniority based on Looney's service as guard in a bargaining unit not covered by the agreement, thus violating Article XI 3.

 Defendant denies that Article XI ·has any application to changes in assignment from one shift to another. Assuming, however, that it could be interpreted as governing transfer from one shift to another, at least when such transfer is incidental to a reduction or increase in forces, there is still no arbitrable issue involved in the present grievance. While Article XI sets out the general principle that seniority is to be a major factor governing transfers, it does not specifically spell out the basis on which seniority is to be applied, but expressly leaves this to be determined by supplemental agreements between union locals and local management (Article XI 2). No such agreement has ever been made by Local 201 and the management of the West Lynn Plant. In many of the bargaining units covered by the National Agreement local agreements have been worked out. Article XI, standing alone without such a supplemental agreement, provides no criterion for determining whether Graciale, with six years' service within this bargaining unit, or Looney, with fifteen years' service with the company but only a few months' service in this department, is to be regarded as having seniority for purposes of determining shift transfers. Unless Article XI can be interpreted as giving Graciale a right to his preference in shifts, it cannot be held that the defendant violated Article XI 3 by retaining Looney on the second shift rather than Graciale.

'There is no language in Article XI, unsupplemented by any local agreement determining specific layoff and rehiring procedures to be followed at the West Lynn Plant, which an arbitrator could interpret so as to determine that any right of Graciale under the agreement has been violated. Consequently the grievance in this case raises no issue arbitrable under the agreement and the relief sought by plaintiff must be denied. Cf. Bay City Shovels, Inc., 110 Labor Arbitration Reports 761.

Judgment for defendant in accordance herewith.