**Virgele BRUEN, Plaintiff,**

v.

**LOCAL 492, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, and Charles Garland, individually and in his official capacity as president of Local 492, and Newark Lamp Plant Division of General Electric Company, Defendants.**

Civ. A. No. 226–66.

United States District Court,
D. New Jersey.

March 6, 1969.

John C. Love, Newark, N. J., for plaintiff.

McCarter & English, Newark, N. J., by David Dugan, Camden, N. J., for defendant Newark Lamp Plant Division of General Electric Co.

Bernard Cherny, East Rutherford, N. J., for defendants Local 492 and Charles Garland.

## OPINION

AUGELLI, Chief Judge.

Plaintiff instituted this action [1] under Section 301(a) of the National Labor Relations Act (Act), 29 U.S.C.A. § 185(a), for the restoration of certain seniority rights and back pay incident thereto. She claims that Local 492 of International Union of Electrical, Radio and Machine Workers, AFL–CIO (Local 492), through its Executive Board, and the Newark Lamp Division (Newark Lamp) of General Electric Company (General Electric), arbitrarily, maliciously and in bad faith deprived her of these seniority rights by adopting, on November 26,

---

1. The action was originally filed as a class action on behalf of plaintiff and all others similarly situated. This as-pect of the case, however, was voluntarily abandoned at the pretrial conference.

1958, an allegedly discriminatory "Local Agreement".

The record discloses that plaintiff was hired by the Seaboard Lamp Division (Seaboard) of General Electric on May 11, 1943 and was employed there until June 23, 1961, at which time she was laid off. Thereafter, on October 26, 1961, plaintiff was hired by and went to work for the Newark Lamp Division of General Electric. Seaboard shut down operations in 1962, but prior thereto both Seaboard and Newark Lamp were located in the same building in Newark, New Jersey. Local 492 represented the employees of both Divisions. When plaintiff was hired at Newark Lamp, she was given a seniority date of October 26, 1961. This date was assigned to plaintiff as a consequence of the local agreement previously mentioned,[2] and affected her rights in matters of layoff, promotion and upgrading. That agreement, insofar as is here pertinent, provides:

"D. Total length of continuous service and service credits as used throughout this Agreement shall mean a total length of continuous service and service credits acquired in the General Electric Company except that any employees hired subsequent to the signing of this Agreement who, at the time of hiring are on layoff from other General Electric components will have as their continuous service and service credits only such continuous service credits as are acquired at Newark Lamp Plant."

Plaintiff alleges that the local agreement wrongfully deprived her of the seniority rights she had earned as an employee of Seaboard; that said agreement was invalid since it was not approved as required by Article XXI of the National Agreement,[3] nor ratified by the membership of Local 492; that said Local and Newark Lamp acted in bad faith and with malice toward her; and that Local 492 breached its duty of fair representation in negotiating the local agreement.

Defendants assert two defenses to the action: lack of jurisdiction, and the statute of limitations.

 This Court is of the opinion that the allegations made by plaintiff are sufficient to confer jurisdiction under Section 301(a) of the Act. See Chasis v. Progress Manufacturing Company, 382 F.2d 773 (3 Cir. 1967).

 As to the defense of the statute of limitations, the period fixed by state law controls. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (UAW) AFL–CIO v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Falsetti v. Local Union No. 2026, United Mine Workers, 355 F.2d 658 (3 Cir. 1966). The New Jersey statute, N.J.S.A. 2A:14–1, provides that every action at law for any tortious injury to the rights of another or for recovery upon a contractual claim or liability "shall be commenced within 6 years next after the cause of any such action shall have accrued". Defendants argue that, in view of the fact that plaintiff is alleging a breach of the National Agreement, her cause of action accrued on November 26, 1958, when the local agreement went into effect. If this were so, plaintiff's action would be barred, since the complaint was not filed until more than six years later. However, plaintiff claims that the alleged breach of the National Agreement was part and parcel of Local 492's breach of duty of fair representation,

---

2. *A contention made by defendants, and which finds support in the record, is that the local agreement of November 26, 1958 merely reduced to writing a practice or policy that had been in effect at Newark Lamp since 1948. There was testimony that prior to November 26, 1958, a worker laid off from a General* Electric Division and thereafter hired by Newark Lamp, would be treated as a new employee and could acquire only such seniority rights at Newark Lamp as his employment in that Division earned for him.

3. Further reference to the National Agreement is made later in this opinion.

which arguably could continue to a date beyond November 26, 1958. To fix such date, on this record, is difficult and no attempt will be made to do so. The Court will assume, without deciding, that plaintiff's action was not barred by the statute of limitations.

■ Consideration will now be given to the merits of plaintiff's claim. There is no basis to support plaintiff's contention that the local agreement resulted in a wrongful deprivation of her seniority rights. Seniority is not an incident of employment. Seniority rights arise solely from the contractual arrangements of the parties. *Aeronautical Industrial District Lodge 727 v. Campbell,* 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949); *N. L. R. B. v. Whiting Milk Corporation,* 342 F.2d 8 (1 Cir. 1965). In pertinent part, Article XI of the National Agreement provides:

"1. Whenever there is a reduction in the working force or employees are laid off from their regular jobs, total length of continuous service, *applied on a plant, department, or other basis as negotiated locally,* shall be the major factor determining the employees to be laid off or transferred (exclusive of upgrading or transfers to higher rated jobs). However, ability will be given consideration. (Italics supplied.)

"Similarly, in all cases of rehiring after layoff, total length of continuous service, *applied on a plant, department, or other basis as negotiated locally,* shall be the major factor covering such rehiring if the employee is able to do the available work in a satisfactory manner after a minimum amount of training. (Italics supplied.)

\*　\*　\*　\*　\*　\*

"2. Since the number of employees in the individual bargaining units covered under this Agreement varies from less than 50 to more than 10,000, each Local shall negotiate with local Management a written Agreement covering the layoff and rehiring procedure for the employees represented by the Local."

■ The quoted language of the National Agreement clearly provides for plant-wide and not company-wide seniority. Furthermore, Article XI does not spell out the basis on which seniority is to be computed, but merely states the general principle that seniority is to be the major factor governing layoffs and rehiring. Section 2 of Article XI expressly leaves the computation of seniority to the local unions and to local management. This conclusion was reached in the case of *Local 201 International Union of Electrical, Radio and Machine Workers, AFL–CIO v. General Electric Company,* 163 F.Supp. 741 (D.Mass. 1958), aff'd 262 F.2d 265 (1 Cir. 1959), where this very Article XI was examined and considered.[4] This Court fully concurs in that conclusion. The National Agreement afforded plaintiff no company-wide seniority rights.

■ In further support of her position, plaintiff points to the fact that on one occasion, in 1958, certain employees, laid off from other General Electric components and rehired by Newark Lamp, were given seniority credits based on total employment with General Electric. The record does reveal that a few employees were given such credits. However, those individuals were not hired with company-wide seniority as a matter of right. They were given increased seniority credits only after having been

---

4. In the cited case, Local 201 sought to have a seniority issue submitted to arbitration. The union argued that under Article XI a person with 6 years service within the bargaining unit had seniority over a person with 15 years of company service, but only a few months of service within the bargaining unit. The court held that Article XI, standing alone, provided no criteria for determining the issue, and that unsupplemented by any local agreement, there was no language in Article XI which an arbitrator could interpret to determine the seniority issue involved in the case. Therefore, no arbitrable issue was presented and the union's action was dismissed.

employed by Newark Lamp for periods of up to ten years. It is clear that this was in the nature of a bonus gratuitously given to the individuals in question, and was not something to which they were entitled as a matter of right. This single occurrence was not intended to modify the existing practice that no employees of any other General Electric component subsequently hired by Newark Lamp carried their seniority with them. The proofs at the trial very definitely showed that such was the practice that was consistently followed before, as well as after, the local agreement was negotiated. The one isolated instance cited by plaintiff does not, under the facts of this case, supply the necessary proof that the local agreement deprived her of any seniority rights.

Contrary to plaintiff's contention, the Court further finds that the local agreement of November 26, 1958, was not negotiated in violation of the National Agreement or the Constitution of Local 492. Article XXI of the National Agreement, headed "Local Understandings", in the pertinent sections thereof, provides:

"1. The provisions of this Agreement are subject to all present local understandings, and such understandings will remain in effect unless changed in the manner provided in the following Section.

"2. After the effective date of this Agreement, new local understandings will be recognized and made effective only where set forth in writing and *signed by local management and the Local, and approved by the Company and the Union.*" (Italics supplied.)

■ Plaintiff's argument that the local agreement was ineffective because it was not approved by the International Union has no basis in fact. The only proof offered on this point was that the agreement was not signed by a representative of the International Union. It can be seen from Article XXI, however, that there is no requirement that the Union sign the agreement, only that it

be approved. Newark Lamp's Supervisor, who negotiated the agreement for local management, testified that the local agreement had been approved, and plaintiff introduced no evidence to the contrary. Thus, plaintiff has failed to carry her burden on this point.

■ Article XXI of the National Agreement contains no requirement that the membership of the local union approve or ratify a local agreement. Similarly, an examination of both the local union's constitution and the local agreement itself, discloses no requirement of ratification by the local's membership. Absent such a provision, there is no extrinsic requirement for ratification. Cleveland Orchestra Committee v. Cleveland Federation of Musicians, 303 F.2d 229 (6 Cir. 1962); Fogg v. Randolph, 244 F.Supp. 885 (S.D.N.Y.1962). It follows, that the failure of the local union to submit the local agreement to its membership for ratification, in and of itself, in no way affected the validity of the agreement. Furthermore, the record shows that the local agreement was in fact ratified by the membership, at a meeting called for that purpose. Testimony offered by plaintiff to refute this was scant and unconvincing.

■ The alleged ratification requirement bears on plaintiff's final contention that Local 492 breached its duty of fair representation. The thrust of plaintiff's argument here is that in negotiating the local agreement of November 26, 1958, Local 492 failed to make an honest effort to protect the interests of plaintiff and other employees of Seaboard. She charges the local with acting intentionally and in bad faith, and with knowledge that Seaboard was about to close down operations. Plaintiff claims that the implementation of the local agreement without prior ratification constitutes an element of the alleged breach of duty of fair representation. Despite the broad allegations, there is little in the record to indicate that Local 492 had knowledge of the impending closedown of Seaboard. All that plain-

tiff can point to are rumors which circulated through the plant from time to time. However, even if the local did know of Seaboard's closedown in advance, this knowledge would only necessitate some action to determine future policies. It would not establish a breach of duty. To make out a breach of duty, plaintiff must show that the union's conduct was arbitrary, discriminatory or in bad faith. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Mere conclusory allegations, without more, will not suffice.

Conflict between employees represented by the same union is a recurring fact. In Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), the Ford Motor Company contracted with two companies for the transportation of its new automobiles from a particular assembly plant. In the face of declining business, the two companies were informed by Ford that the services of only one company would be required. Employees of both companies were represented by the same union. The two companies involved reached an agreement that resulted in the withdrawal of one of the companies from the operation. Employees of the withdrawing company who were laid off because of this arrangement filed a grievance with the union. To meet the situation, it was decided to "dovetail" the seniority lists of both companies. Persons who lost their jobs as a result of this dovetailing filed grievances and later challenged its validity on the ground, inter alia, that it was a breach of the union's duty of fair representation. The Court found that the dovetailing of the seniority lists was the most equitable solution for all concerned, and upheld the union's decision because it was taken in good faith. The Court further stated that it was "not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another."

Similarly, in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), the Court upheld a union decision which gave some employees increased seniority credit at the expense of others. Said the Court, at page 338, 73 S.Ct. at page 686:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

■■■ The essential element that must be shown to sustain a charge of breach of fair representation is bad faith, an intent on the part of the union to discriminate, without justification, against a portion of the union membership. Hardcastle v. Western Greyhound Lines, 303 F.2d 182 (9 Cir. 1962). The essential elements are lacking in this case.

For the reasons stated herein, plaintiff's action will be dismissed. Counsel for defendants, on notice to counsel for plaintiff, will submit an appropriate order.

This opinion shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.