**LOCAL 4076, UNITED STEELWORKERS OF AMERICA, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMER-ICA, AFL–CIO et al., Defendants.**

**Civ. A. No. 70–486.**

United States District Court,
W. D. Pennsylvania.

Jan. 27, 1972.

Supplemental Memorandum and
Order Feb. 15, 1972.

Louis P. Vitti, Stone & Raynovich, Pittsburgh, Pa., for plaintiff.

John H. Neely, Neely & Stockdale, A. E. Lawson, Asst. Gen. Counsel, United Steelworkers of America, Thomas H. M. Hough, Lucchino, Gaitens & Hough, Herman L. Foreman, William J. LeWinter, Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

This is an action brought under Section 301 of the Labor Management Relations Act of 1947, as amended,[1] (29 U. S.C. § 185, as amended) by a displaced group of employees designated, for the purpose of this action, as Local 4076, United Steelworkers of America ("Local 4076"). The action alleges (1) a breach of a contract between an employer and a labor organization in the form of an arbitration award incident to a collective bargaining agreement, and (2) a breach of a union's duty of fair representation. The defendants are Woodings-Verona Tool Works; the United Steelworkers of America, AFL–CIO ("United Steelworkers"); and Local 1465, United Steelworkers of America ("Local 1465").

The relevant facts are found in the stipulations of the parties and the evidence introduced at the non-jury trial of this action. Defendant United Steelworkers was, prior to November 20, 1967, the duly certified and authorized bargaining representative of the production employees of both the defendant Woodings-Verona and The Klein Logan Company. To assist it administratively, the United Steelworkers had created Locals 1465 and 4076 to represent the employees of Woodings-Verona and Klein Logan, respectively. On November 20, 1967, Woodings-Verona purchased Klein Logan. Subsequently, Woodings-Verona notified the United Steelworkers that it intended to move the Klein Logan operations, including the Klein Logan employees, from Pittsburgh to Oakmont, Pennsylvania, the site of its principal plant. It is this offer to assimilate the Klein Logan employees which, ironically, is the source of the present problem.

At the time of the purchase there were existing two labor agreements—one between Klein Logan and the United Steelworkers, covering the period from September 30, 1965 to September 25, 1968, and another between Woodings-Verona and the United Steelworkers, covering the period from November 25, 1965 to October 1, 1968. Too, there were existing two separate seniority lists—one covering the Klein Logan employees and the other covering the Woodings-Verona employees. Prior to November 20, 1967, the two lists were completely independent of each other. The proposed interweaving of the employees of the two companies, however, produced the problem of interweaving the two seniority lists as well. The employees of Woodings-Verona (Local 1465) urged that any and all of the incoming employees from Klein Logan be afforded seniority with Woodings-Verona only from November 20, 1967. Conversely, the employees of Klein Logan urged that any and all transferred employees be fully credited with the seniority which they accrued while with Klein Logan. When the parties found themselves unable to resolve the problem, they put it to final and binding arbitration, presumably pursuant to both labor agreements.[2]

The arbitrator, Myron L. Joseph, made his award on June 19, 1968.[3] Some of

---

1. Section 301(a) provides that,

 "Suits for violation of contracts between an employer and a labor .organization . . . or between any . . . labor organizations, may be brought in any district court of the United States."

2. While the named parties to the arbitration were only Woodings-Verona and the United Steelworkers, it was Klein Logan's counsel who participated in the proceedings on behalf of the companies.

3. See Appendix A.

those affected by the award, particularly the members of Local 1465, however, were, ostensibly, confused by the award, and it was therefore referred to William J. Hart, Director of District 19, United Steelworkers, for interpretation. On July 19, 1968, he rendered his interpretation.[4]

Thereafter, between July 29, 1968 and August 19, 1968, the transfer of the Klein Logan employees was effected and with the dissolution of Klein Logan, the labor agreement between it and the United Steelworkers terminated. Consequently, on February 25, 1969, the United Steelworkers cancelled and withdrew the charter of Local 4076. On the other hand, the agreement between Woodings-Verona and the United Steelworkers which expired on October 1, 1968, was succeeded by an agreement covering the period from October 10, 1968 to August 31, 1972.

The plaintiff to this action is an association of the transferred Klein Logan employees.[5] The contract "between an employer and a labor organization" which the plaintiff alleges a violation of is, particularly, the arbitration award of June 19, 1968, as it grew out of the then obtaining labor agreements between Klein Logan and the United Steelworkers and Woodings-Verona and the United Steelworkers.[6] The plaintiff construed the award as providing that although Klein Logan employees were not entitled, by virtue of their seniority, to "bump" into positions at Woodings-Verona's Oakmont plant, they were entitled, if and when they were offered and accepted employment with Woodings-Verona, to totally "dovetail" their seniority with the seniority of the incumbent Woodings-Verona employees.[7] Mr. Hart, however, interpreted the award differently. He read it to provide that, with respect to Woodings-Verona employees on the payroll at the time of the purchase, the seniority of the transferred Klein Logan employees would be fixed at November 20, 1967. Further, he read it to provide that (1) with respect to the transferred Klein Logan employees *inter se*, their seniority would be transplanted unchanged, and (2) with respect to employees hired by Woodings-Verona after November 20, 1967, their seniority would be subject to that of all the transferred

4. See Appendix B.

5. In Local 4076, United Steelworkers of America v. United Steelworkers of America, AFL–CIO, 327 F.Supp. 1400 (D.C. W.D.Pa., 1971) we decided that this action was a proper one under § 301, and that however self-mischaracterized or misnamed, the plaintiff had legal capacity and standing, as an unincorporated association, to maintain this action. To allay the defendants' fears, we are treating the plaintiff neither as a labor organization nor as a bargaining representative. We are treating it simply as a group of employees formed to prosecute the common complaints which underlie this action. We have proceeded on Justice Holmes' theory that a court should consider what words mean rather than what words say. In Johnson v. United States, 163 F. 30 (1st Cir. 1908), in the context of the interpretation of the meaning of words of a statute, he cautioned that,
 ". . . it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before."

This would seem to apply analogously in the context of federal pleading when, as here, no particular prejudice is worked by looking to what the plaintiff is attempting to do rather than strictly to what it is doing. Parenthetically, we note that this action might have presented far fewer problems had the named plaintiffs been the individual members of "Local 4076".

6. If an arbitration award is not itself a "contract", it is, at least, an integral incident of the collective bargaining agreement of which it is an outgrowth. See Retail Clerks International Association v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962).

7. In Bieski v. Eastern Automobile Forwarding Company, 396 F.2d 32 (3rd Cir. 1968) "dovetailing" was defined as ". . . a labor relations term referring to some system of unifying, on one 'board', two previously separate seniority lists." "Dovetailing" generally involves intermeshing two seniority lists rather than simply tacking one to the bottom of the other. The varieties of "dovetailing" are of course infinite.

Klein Logan employees. Not surprisingly, the defendants implemented Mr. Hart's interpretation, and in turn the plaintiff instituted this action.

Preliminarily, the defendants attack the judicial cognizability of this action. The defendants argue that it focuses primarily on a breach of the duty of fair representation, rather than a breach of a labor agreement, and therefore the jurisdiction of the federal courts is preempted by the jurisdiction of the National Labor Relations Board. The defendants also argue that the plaintiff has failed to exhaust (1) intra-union grievance procedures, and (2) contractual grievance procedures, both of which it is suggested, are indispensable prerequisites to the maintenance of this action.

 Assuming that this action is principally for a breach of the duty of fair representation, the defendants' first contention was squarely rejected in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). There the Court held that,

" . . . the unique role played by the duty of fair representation doctrine in the scheme of federal labor laws, and its important relationship to the judicial enforcement of collective bargaining agreements . . . render the . . . pre-emption doctrine inapplicable."

Further, that an action by an employee (or a group of employees) against both his employer and his union alleging breaches of both a labor contract and the duty of fair representation is with-

in the ambit of § 301(a) was settled in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).[8]

The defendants' second contentions are equally unobstructive to the jurisdiction of this court. With respect to the defendant unions' contention that the doctrine requiring the exhaustion by union members of intra-union charge procedures prior to proceeding in the courts has not been satisfied, we look initially to Section 101(a) (4) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a) (4). That section provides that a labor organization may not limit the right of any member to institute an action in any court, except that a member may be required to exhaust reasonable internal hearing procedures (not to exceed four months in duration) before resorting to the courts to seek redress of an internal grievance.[9] In Giordani v. Upholsterers International Union of North America, 403 F.2d 85 (2d Cir. 1968), it was deemed to be,

" . . . beyond question that the statutory exhaustion requirement [§ 101(a) (4)] does not give the union authority to compel its members to pursue internal remedies before resorting to the courts, but rather preserves the discretionary exhaustion doctrine as it had been judicially developed, subject to the four-month limitation."

See also N L R B v. Industrial Union of Marine & Shipbuilding Workers of America, AFL–CIO, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); Fulton Lodge No. 2 of the International As-

8. Our circuit had occasion in Fuller v. Highway Truck Drivers and Helpers Local 107, 428 F.2d 503 (3rd Cir. 1970) to state that it is,

" . . . settled that an employee may look to the federal courts for relief under Section 301(a) of the Act in order to vindicate his individual rights under a collective bargaining agreement if he demonstrates that his union did not perform its duty toward him, fairly, honestly, and without discrimination."

In fact, in Fuller although the employer was a named defendant, the only issue presented was

" . . . whether [the union] breached its duty of fair representation by the manner in which it participated in the resolution of the seniority dispute."

9. Article XIII, Sec. 7 of the Constitution of the United Steelworkers provides that, "It shall be the duty of a member to exhaust all of his internal remedies and appeals provided under the Constitution and policies of the International Union and the Local Union By-Laws."

sociation of Machinists and Aerospace Workers, AFL–CIO v. Nix, 415 F.2d 212 (5th Cir. 1969); and Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2d Cir. 1961).

This principle was thoroughly reviewed in Brady v. Trans World Airlines, Inc., 401 F.2d 87 (3rd Cir. 1968), cert. den'd., 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969). In *Brady*, the plaintiff, because he was delinquent in his dues, was expelled from his union, and consequently, at the instance of his union, from his employment for violating the union security provision of the collective bargaining agreement. To the action which he brought against (1) his employer for wrongful discharge and (2) his union for breach of the duty of fair representation, the defendant union asserted as a bar, his failure to exhaust intra-union grievance procedures. Distinguishing between the two prongs of the action, the Court held that the doctrine of exhaustion of internal union remedies was inapplicable as against the employer, reasoning that since that prong of the complaint centered on the employment relationship rather than the union relationship, the internal union procedures could not possibly afford the plaintiff a remedy. As against the union, however, the Court held that,

> "[I]t has been the general rule, and the rule of this circuit, that before a suit against a union for breach of its duty of fair representation may be brought in the courts, the member must first exhaust the available internal union remedies, or show an adequate reason for failing to do so." [10]

To apply the principles of *Brady*, it becomes necessary to similarly distinguish between the claims of this action. The complaint states two causes of action, one against all of the defendants for breach of a labor contract, and one against only the defendant unions for breach of the duty of fair representation. Initially, all of the defendants argue that even if their implementation of Mr. Hart's interpretation of the arbitration award amounted to breaches respectively, of the labor agreement and the duty of fair representation, that the expirations of the agreements make this action moot.

■■ In our view, the plaintiff seeks by this action (1) primarily to compel the restructuring of the present seniority at Local 1465 to comport with the arbitration award of Myron Joseph, and (2) only secondarily to recover damages for the wages lost by its members as a result of their inaccessibility to extra and higher paying jobs. With respect to the claim for damages, we think that since "Local 4076" as an unincorporated association has suffered no damages, it may recover none. Nor do we think it may recover damages on behalf of its members since we have here recognized it as a jural entity solely for the purpose of prosecuting the common complaints of its members, and damages are individual claims. Removing the request for damages, then, we are left with the request to restructure the seniority list of Local 1465, a request which concerns only the defendant unions. In this context, the fact that the agreements underlying the arbitration award have expired serves not to make this action moot, but to crystallize the issue with which we are faced—whether or not the United Steelworkers and Local 1465 breached their duties to fairly represent their members in the negotiation of the agreement which succeeded the expired contracts, that of October 10, 1968, in providing for seniority at Woodings-Verona's Oakmont plant. Our focus thus sharpened; we think it appropriate to apply the rule of *Brady* which relates to actions against a union for a breach of the duty of fair representation. And since it is not contended that the plaintiff exhausted the

---

10. To support this proposition, the Court cited a number of cases including Gainey v. Brotherhood of Railway & Steamship Clerks, etc., 275 F.2d 342 (3d Cir. 1960), cert. den'd., 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960), and 313 F.2d 318 (3d Cir. 1963), and Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2d Cir. 1961), cert. den'd., 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

available internal union remedies, the question is whether or not it has shown "an adequate reason for failing to do so".

The internal union remedies available to the members of former Local 4076 are presumably embodied in the Constitution of the International Union, United Steelworkers of America, AFL–CIO.CLC. We are unable to discern from that document, however, what remedies or procedures were available to the plaintiff's members to have Mr. Hart's interpretation reviewed. Article XIII of the Constitution, which deals with "Trials of Members and Local Union Officers", provides that charges against a member or a local union officer must be first submitted, in writing, to the local union of which the individual charged is a member or an officer. While Mr. Hart is probably a member of a local union, whether or not he is subject to a trial at the local level is questionable. Moreover, the members of former Local 4076 did not seek to have anyone "tried", found "guilty", or penalized as Article XIII contemplates. They were not concerned with retribution; they were concerned only with appealing Mr. Hart's interpretation. Article IV, Sections 1 and 22, taken together, provide that the International Executive Board shall have the power to remove a District Director for, inter alia, "maladministration". Again, however, the plaintiff sought to remove no one from office. The most pertinent portion of the Constitution appears to be Article IV, Section 24. That section provides that the International Executive Board shall have the power to decide "all appeals made to it". This would seem to be the section that affords the plaintiff the appropriate internal remedies. Neither the nature nor the scope of the allowable "appeals" is circumscribed, and other than Articles IV and XIII, there are no perceivable provisions which even colorably establish remedies or procedures for calling into question the edicts of District Directors. Finally, Article IV, Section 5 of the Con-

stitution provides that the International President shall preside at all sessions of the International Executive Board and shall convene special meetings of the International Executive Board "whenever necessary".

It was precisely to call into question the edict of District Director Hart of July 19, 1968, that the plaintiff, through its attorney, directed a letter dated September 26, 1968 to I. W. Abel, President of the United Steelworkers. The letter advised Mr. Abel of the "considerable contention as to the proper interpretation of Mr. Joseph's rulings", and expressed the plaintiff's desire, before taking the matter to the courts, "to exhaust all of the remedies provided for in the Union Contract". Whether or not that letter was the right way to proceed under Article IV of the Constitution to appeal Mr. Hart's interpretation is unclear, but it is clear that a fair reading of the Constitution supports either of two conclusions (1) that that was the right way, or (2) that there is no way.

Mr. Abel's reply to that letter references a denial by Mr. Hart of a dispute over his interpretation, and requests the submission by the plaintiff of the details of the dispute. The ensuing correspondence between President Abel and "Local 4076", and their attorneys, proved to be evasive and frustrating to the plaintiff's members. In addition, their efforts to pursue the matter through both Mr. John Rodriquez, the then President of Local 1465, and Mr. John Toner, Staff Representative, United Steelworkers proved equally futile. Even the "Grievance Report" filed by Local 4076 on February 4, 1969 with the International Executive Board detailing the dispute went totally unnoticed. In sum, it was made painfully clear to the plaintiff that no internal procedures were going to be convened to review Mr. Hart's interpretation by either President Abel, the International Executive Board, or Local 1465.[11]

11. Obviously, Local 1465, in whose favor the interpretation was rendered, was not and could not be expected to be a ready source of assistance to the plaintiff.

We think the evidence demonstrates that Local 4076 earnestly, if not artfully, attempted to pursue whatever internal union remedies were ascertainably available to it, before it came to court. The procedures by which to invoke Article IV, apparently the relevant Article, are not spelled out in the Constitution. Absent determinable procedures, the plaintiff's letters to Mr. Abel, and the "Grievance Report" filed with the International Executive Board, were surely sufficient to put the United Steelworkers on notice of the disgruntlement of Local 4076 with Mr. Hart's interpretation, and of its desire to have it reviewed. In Shultz v. Local 1291, International Longshoremen's Association, 429 F.2d 592 (3rd Cir. 1970), it was held that the sending of a notice of appeal to the secretary of, rather than to the president of, the "District Council" as the Constitution of the International Longshoremen's Association required, was effective to put the "District Council" as a body on notice of the appeal, and was sufficient to satisfy the exhaustion of remedies doctrine, notwithstanding the, in fact, unexhausted remedies. Too, in Brady v. Trans World Airlines, Inc., *supra*, it was observed that when a member of a labor union is openly attempting to seek review, within the union, of a matter which affects his rights within the union, it is the fiduciary duty of the union, through its officials, to make known and available to him its remedial procedures. For the members of "Local 4076" that was not done; in fact, the opposite was done, i. e., the union, through its officials, effectively evaded and ignored the attempts of Local 4076 to invoke whatever internal remedial procedures were available to it. We conclude that the evidence adequately explains the failure of the plaintiff to exhaust available internal union remedies and that this action may, therefore, be maintained. Further, we conclude that the doctrine of Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), which requires the prior exhaustion of the grievance and arbitration procedures of the labor agreement, does not preclude this action in view of our disposition with respect to its focus.

The issue which remains is, indeed, the focal issue of whether or not the defendant unions, particularly the parent United Steelworkers, breached the duty of fair representation which it owed to the plaintiff's members. In Vaca v. Sipes, *supra*, this duty, and its derivation, were outlined as follows:

" . . . the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

This duty had its genesis in Steele v. Louisville & N. R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). While *Steele* involved racial discrimination, as stated in Brady v. Trans World Airlines, Inc., *supra*,

" . . . it is now recognized that the statutory power conferred on unions imposes on them a corresponding duty which encompasses the prohibition of *all forms* of hostile discrimination." (Emphasis supplied.)

On the other hand, as suggested in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953) (quoted in Humphrey v. Moore, *supra*), it must be borne in mind that:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

Our circuit recently considered the scope of this duty in Bazarte v. United Transportation Union, 429 F.2d 868 (3rd Cir. 1970). There it was noted that the duty of fair representation is a fiduciary one, is one which covers the *negotiation, administration* and *enforcement* of collective bargaining agreements, and is one that requires more to breach than simply negligence or poor judgment. What *Bazarte* requires is arbitrary or bad faith conduct.

■ Most of the cases which have construed the duty of fair representation in the context of meshing seniority rights following a merger, have confronted the duty more in terms of the participation of the union in the original adjustment rather than in the subsequent protection thereof. See, e. g., Simberlund v. Long Island Railroad Company, 421 F.2d 1219 (2d Cir. 1970); Schick v. N. L. R. B., 409 F.2d 395 (7th Cir. 1969); Truck Drivers and Helpers, Local Union 568 v. N. L. R. B., 126 U.S.App.D.C. 360, 379 F.2d 137 (1967); and Ferro v. Railway Express Agency, Inc., 296 F.2d 847 (2d Cir. 1961).[12] In this action, however, the original adjustment of the seniority rights was delegated by Woodings-Verona and the United Steelworkers to the arbitrator, Myron Joseph, and there is no claim that this was not perfectly proper. Seniority rights are not vested, but derive their scope and significance from union contracts. Aeronautical Industrial District Lodge 727 v. Campbell,

337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949); N. L. R. B. v. Whiting Milk Corporation, 342 F.2d 8 (1st Cir. 1965); and Bruen v. Local 492, International Union of Electrical, Radio, and Machine Workers, AFL–CIO, 313 F.Supp. 387 (D.C. D.N.J.1969). And it was from the union contracts that the arbitrator was to forge the adjustment of the involved seniority rights. He was to, without restriction, finally and bindingly harmonize the seniority rights of the members of Local 4076 with those of the members of Local 1465. Specifically, he was to determine "the seniority rules to be followed with respect to job and work opportunities when the two [Klein Logan and Woodings-Verona] operations [were] consolidated". In The Matter Of Arbitration Between Woodings-Verona Tool Works And United Steelworkers Of America, AFL–CIO, Myron L. Joseph, Arbitrator (June 19, 1968).

In a carefully considered opinion, Mr. Joseph determined (subject to certain limitations here unimportant) [13] as follows:

"Employees from both locations [Klein Logan and Woodings-Verona's Plant No. 2] shall be credited with their full continuous service starting with July 23, 1931 at either the Klein Logan plant or the Woodings-Verona Tool Works as defined in their respective contracts, for plant seniority purposes related to job and work opportunity . . . .."

12. An unusual, superficially similar, but easily distinguishable case is Bruen v. Local 492, International Union of Electrical, Radio, and Machine Workers, AFL–CIO, 313 F.Supp. 387 (D.C.D.N.J. 1969), aff'd., 425 F.2d 190 (3rd Cir. 1970). In *Bruen*, interdivisional seniority rights were involved. Briefly, in 1958, General Electric Company (a defendant) and the defendant union agreed that, " . . . all employees then in the Newark Lamp Division were to have their seniority determined by their total length of service with [General Electric], whereas employees subsequently hired by the Division after layoff from another component of [General Electric] were to have their seniority based on their service in the Newark Lamp Division only." The

plaintiff was laid off from another "component" of General Electric on June 23, 1961, and was hired by the Newark Lamp Division on October 26, 1961. The agreement was found not to be arbitrary or in bad faith principally because it was the prior practice of the division, it was suggested by management to resolve difficulties within the division which involved comparatively few employees, and it was essentially prospective and did not immediately disadvantage any known employee or group of employees.

13. Klein Logan employees were not entitled to "bump" into the Woodings-Verona plant, i. e., they were not entitled to displace any Woodings-Verona employees to get into the plant.

**1162**

We wish to make clear that it is not our function to judge the fairness, wisdom or acceptability to the parties of this award.[14] The parties agreed to submit the matter to arbitration and that the arbitrator's award would be final and binding. Our narrow function is to decide whether or not the defendant unions, particularly the United Steelworkers which was a party to the arbitration and which ultimately represents all of the involved employees, breached its duty to fairly represent the members of the plaintiff in the enforcement of the award in the negotiation of the agreement of October 10, 1968, which enforcement implemented the interpretation of the award of District Director Hart. In the letter in which he rendered his interpretation, Mr. Hart indicated that he had discussed the "impact" of the award with Local 1465 officers, and that:

> "It [was his] opinion that the decision in no way gives the Klein Logan employees seniority rights, after arrival in Oakmont, over Woodings-Verona employees hired prior to November 1, 1967."

This interpretation has governed the seniority rights of the transplanted employees since, i. e., it prevailed not only until the then contract of November 25, 1965 expired on October 1, 1968, but has prevailed, pursuant to an express agreement between the United Steelworkers and Woodings-Verona of March 26, 1969, throughout the term of the successor agreement of October 10, 1968, which is presently in effect.[15]

■ We think this interpretation to be subversive of the award, and the seniority rights of the plaintiff's mem-

bers. The award was unambiguous. It provided that the transferred Klein Logan employees were to be given credit for their full continuous service from July 23, 1931, for seniority purposes related to job and work opportunities. Its supporting statement makes even more clear the intention of the arbitrator to "dovetail" fully the subject seniority lists. Notwithstanding the clarity of both the award and the intention of the arbitrator, the United Steelworkers, through Mr. Hart, emasculated the award by changing the date from July 23, 1931 to November 1, 1967. Thereby, all of the transferred Klein Logan employees were placed at the bottom of Woodings-Verona's November 1, 1967 seniority list. The United Steelworkers' disrespect of the award and the rights which it conferred on the members of the plaintiff persisted through the negotiation of the labor agreement of October 10, 1968, and it is that labor agreement, with its underlying understanding of March 26, 1969, which presently deprives the transferred employees of their seniority rights. In those negotiations, the United Steelworkers cannot be considered simply to have failed to secure for the members of former Local 4076 rights which were undetermined and bargainable; it must be considered to have taken from those members that which had already been secured to them.

We find that in the interpretation of Mr. Hart and in the negotiation of the October 10, 1968 agreements the defendant United Steelworkers breached the duty of fair representation which it owed to the transferred Klein Logan employees.[16] The absence of ambiguity in

14. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); and Safeway Stores v. American Bakery & Confectionery Workers International Union, Local 111, 390 F.2d 79 (5th Cir. 1968).

15. The agreement with Woodings-Verona, however, uses a cut-off date of November 20, 1967, rather than November 1, 1967, with respect to the seniority rights of after-hired Woodings-Verona employees.

16. To repeat, we are not deciding whether or not it would have been a breach of the duty of fair representation had the union, without resort to arbitration agreed with the company to mesh the seniority rosters by placing all transferred Klein Logan employees at the bottom of the

Mr. Joseph's award makes Mr. Hart's interpretation, and its incorporation into the collective bargaining agreement of October 10, 1968, arbitrary and in bad faith. In fact, we deem the "interpretation" to have made a mockery not only of the award, but also of the integrity of the principles of arbitration. In Gainey v. Brotherhood of Railway and Steamship Clerks, etc., 313 F.2d 318 (3rd Cir. 1963), the decisions of the courts which have found the duty of fair representation to have been breached were categorized. One of the categories was that,

" . . . involving the arbitrary sacrifice of a group of employees' rights in favor of another stronger or more politically favored group . . .."

In this instance, the clear rights of the transferred employees, who numbered approximately 30, were denied in favor of the incumbent Woodings-Verona employees, who numbered approximately 70.

We need not decide whether or not the defendants Local 1465 and Woodings-Verona were in complicity with the United Steelworkers. The presently existing seniority list resulted primarily from the United Steelworkers' breach of the duty which it owed to the members of the plaintiff, and is a matter with which unions, as opposed to management, are peculiarly concerned. Too, we have decided that no damages are recoverable by the plaintiff. Therefore, the United Steelworkers will be directed to reorder the presently existing seniority list to accommodate Mr. Joseph's award pursuant to our interpretation. Concomitantly, all of the defendants will be directed to honor the reordered list.

This opinion constitutes the findings of facts and conclusions of law required by F.R.Civ.P. 52.

## APPENDIX A

Award:

After careful analysis of alternative procedures in the light of the seniority lists, planned equipment moves, and the tentative work force report, and after consideration of the arguments presented, and of the interests and rights of all parties concerned, the following seniority rules have been found to be the most appropriate and the most equitable under the circumstances, and the parties are instructed to adopt them in consolidating the operations of the Klein Logan and Woodings-Verona Plant No. 2 at the latter location:

1. Employees from both locations shall be credited with their full continuous service starting with July 23, 1931 at either the Klein Logan plant or the Woodings-Verona Tool Works as defined in their respective contracts, for plant seniority purposes related to job and work opportunities subject to the limitations set forth below.

2. Employees from the Klein Logan plant shall not have the right to bump into the Woodings-Verona plant.

3. Employees from the Klein Logan plant may be transferred to the Woodings-Verona plant to jobs identical to or similar to those held by them at the Klein Logan plant. In making such transfers employees from the Klein Logan plant may not displace any Woodings-Verona employees, hired before the date of purchase, from their current bid jobs as identified by the seniority list of Plant No. 2. The tentative force report dated June 5, 1968, identified as Joint Exhibit No. 7, describes the result of such a transfer of employees from the Klein Logan location to corresponding classifications at the Woodings-Verona plant without displacing any Woodings-Verona employees hired before the transfer.

4. Unassigned employees from the Klein Logan plant shall have the right to bid for vacancies at the Woodings-Verona Plant No. 2 on the basis of their seniority and ability until their employment is permanently terminated.

5. All seniority provisions of the Woodings-Verona Agreement shall remain unchanged, and shall be applicable

Woodings-Verona seniority list. That would be an entirely different matter; one with which we are not concerned and one which we do not purport to decide.

to employees from the Klein Logan plant who have transferred or bid into jobs in accordance with the procedures described above in the same manner as they are applied to present employees at Plant No. 2.

June 19, 1968

/s/ Myron L. Joseph, Arbitrator

### APPENDIX B

United Steelworkers of America
District 19
400 Lock Street
Tarentum, Pennsylvania
Phone: 224–0000

July 19, 1968

Mr. W. H. Wooding, President
Woodings Verona Tool Works
Oakmont, Pennsylvania

Dear Mr. Wooding:

I have discussed the impact of Arbitrator Myron Joseph's decision in regard to seniority with the Local Union 1465 Officers and Staff Representative Russell Anthony.

It is my opinion that the decision in no way gives the Klein Logan employees seniority rights, after arrival in Oakmont, over Woodings-Verona employees hired prior to November 1, 1967.

Sincerely,

[s] Wm. J. Hart
Director, District #19

WJH:hms

### SUPPLEMENTAL MEMORANDUM AND ORDER

This action, which was tried non-jury, resulted in a finding that the defendant unions, particularly, the United Steelworkers of America, AFL–CIO, breached the duty of fair representation which they owed to their members. As the breach was found to be patent, it was ordered that counsel for the plaintiff submit a bill of counsel fees sought as an award for the representation of the plaintiff. Further, it was provided that the defendants could file objections thereto. Both have responded.

Although it is usual that counsel fees are awardable only if statutorily allowed, in such suits as the instant one and in appropriate circumstances, counsel fees may be awarded absent express statutory authorization. DeArroyo v. Sindicato De Trabajadores Packinghouse, AFL–CIO, 425 F.2d 281 (1st Cir. 1970); Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473 (4th Cir. 1951); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (dissenting opinion of Mr. Justice Black); and, generally, Gartner v. Soloner, 384 F.2d 348 (3rd Cir. 1967). As indicated in the final Opinion in this suit (January 27, 1972), the instant circumstances are eminently appropriate.