Roger W. JENSON, Appellant,

v.

T. O. OLSON, James Gooley, Arnold A. Matta, and H. V. Jensen, Thomas Kachelmacher, Glen Galles and John Burmeister, Appellees.

No. 18006.

United States Court of Appeals
Eighth Circuit.

Dec. 16, 1965.

James Malcolm Williams, Minneapolis, Minn., for appellant.

G. V. Johnson, Asst. City Atty., Minneapolis, Minn., for appellees.

Before MATTHES and GIBSON, Circuit Judges, and REGAN, District Judge.

GIBSON, Circuit Judge.

Appellant, Roger W. Jenson (referred to hereafter as plaintiff) appeals from an order of the United States District Court for the District of Minnesota, dismissing his amended complaint for the reason "that the pleadings herein failed to state a claim against defendants or any of them upon which relief can be granted."

The defendants all hold either municipal positions with, or are employees of, the city of Minneapolis. They are: Glen Galles, Thomas Kachelmacher and John Burmeister, Commissioners of the Civil Service Commission; H. V. Jensen, Superintendent of the Relief of the Public Relief Division of the Board of Public Welfare; Arnold A. Matta, Administrative Assistant of the Public Relief Division of the Board of Public Welfare; James Gooley, Unit Supervisor of the Central Office of the Public Relief Division of the Board of Public Welfare; T. O. Olson, Director of Casework Services of the Public Relief Division of the Board of Public Welfare. The defendants other than the Civil Service Commissioners were either superiors of plaintiff or were those holding positions in the Department of Public Welfare who testified adversely to plaintiff in a hearing before the Civil Service Commission.

Plaintiff was employed as a case worker by the Department of Public Welfare, Public Relief Division for a period commencing November 23, 1959 until his suspension on December 8, 1961 for "misconduct." Plaintiff's difficulties are the result of his case reports. In these reports he made repeated criticisms and charges relative to political influence and fraud in the Welfare Department as well as alleging inequities and inefficiencies within the departmental operation.

Plaintiff demanded a hearing which he was entitled to as a matter of right.[1] The Civil Service Commission made certain findings of fact and on the basis of

---

[1]. M.S.A. § 197.46 Plaintiff, employee could not be "removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writ-ing." See also Minneapolis City Charter, Chapter 19, Section 11 requiring also written charges and an opportunity to be heard.

these facts ordered plaintiff discharged.[2] The proceedings before the Civil Service Commission were reviewed by certiorari and affirmed by the State District Court and, upon appeal, affirmed by the Minnesota Supreme Court. See, State of Minnesota ex rel. Jenson v. Civil Service Commission of City of Minneapolis et al., 268 Minn. 536, 130 N.W.2d 143, 147 (1964), cert. denied 380 U.S. 943, 85 S. Ct. 1023, 13 L.Ed.2d 962 (March 15, 1965), in which the Court said:

> "The record, as demonstrated by the exhibits, is replete with instances of his pertinacious refusal to follow the instructions of his superiors, to obey orders, and to conform to departmental requirements and procedures deemed important and vital to the conduct of public business, all of which the commission was at liberty to regard as misconduct justifying dismissal."

Prior to a denial of Certiorari by the Supreme Court of the United States, plaintiff filed the present complaint in the United States District Court.

 On the merits of the original charges against plaintiff we express no opinion. The Minneapolis City Charter and the state statute protected him from arbitrary dismissal. The adequate state procedure was reviewed and affirmed by the Minnesota courts with certiorari being denied by the United States Supreme Court. These proceedings are *res judicata* on the issue of plaintiff's discharge for misconduct and the merits are not a proper subject for review by the Federal Courts. As stated in Hanna v. Home Insurance Co., 281 F.2d 298, 303 (5 Cir. 1960), "A federal district court has no original jurisdiction to reverse or modify the judgment of a state court." More specifically Bailey v. Richardson, 86 U.S.

App.D.C. 248, 182 F.2d 46, 64 (1950) stated, "The line of cases in which this court has said that courts will not review the action of executive officials in dismissing executive employees, except to insure compliance with statutory requirements, is unvaried."

The amended complaint alleges in substance that plaintiff was charged with professional misconduct and discharged because of plaintiff's exercise of his constitutional right to free speech, and contended that said discharge was the result of the combined efforts of the defendants herein to deprive and restrict the right of free speech of the plaintiff and secondarily to deprive the plaintiff of due process and to imperil plaintiff's contractual obligations in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section Ten of the Constitution. The complaint further charges that the defendants met "during the process of the Civil Service Commission for the purpose of carrying out the common design * * of depriving plaintiff of his right to free speech, depriving the plaintiff of his right to due process and imperiling the contract obligations of plaintiff."

Plaintiff contends that § 1983 of Title 42, U.S.C.A. affords him the right to relitigate the issues raised in the state proceedings and in addition seeks substantial damages. Section 1983 declares that:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

2. "* * * contrary to the instructions of his supervisors relator [plaintiff] on specific dates and on other occasions persisted in injecting irrelevant personal comments and criticisms into official case records assigned to him for investigation and report. The commission also found that he willfully disobeyed two direct orders of his supervisors to sign his dictation and that he persistently refused to comply with departmental customs, requirements, and procedures." State of Minnesota ex rel. Jenson v. Civil Service Commission of City of Minneapolis, supra, 130 N.W.2d at p. 145.

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Obviously, to maintain this present complaint under the civil rights statute, he must allege facts showing that defendants did deprive him of rights, privileges, and immunities secured by the Constitution and laws of the United States. See, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

In passing on the sufficiency of the amended complaint we must assume the well pleaded factual allegations are true. Gibson v. Reynolds, 172 F.2d 95, 99 (8 Cir. 1949).

Here plaintiff asserts a right to make any criticism or charges he deems warranted under the protection of the First and Fourteenth Amendments. Within the bounds imposed by the laws of libel and slander no one would deny that plaintiff has this right. Plaintiff, however, has no right to public employment. He may speak as he pleases and level charges at all suspects. But if the exercise of this privilege disrupts his own work and reduces the efficiency of the department he is subject to discharge for cause. The plaintiff has an absolute obligation to satisfactorily perform the duties and work inherent in his position. One of these duties is to conform to departmental regulations in making his investigations and reports. He may speak as he wishes but also must be responsible for his statements. When his speech is disruptive of the proper functioning of the public's business the privilege of governmental employment may be withdrawn without it being said that he was denied his freedom of speech. To hold otherwise would enable governmental employees to practice the rankest form of insubordination and safely hide behind the right of free speech. Bailey v. Richardson, supra, 182 F.2d at pages 59–60 held that "The First Amendment guarantees free speech and assembly, but it does not guarantee Government employ. * * * (T)here is no basic right to Government employ, any more than there is to employment by any other particular employer."

Thus the Constitution protects the right of free speech but it does not guarantee plaintiff employment with the City of Minneapolis. As stated by the United States Supreme Court in Adler v. Board of Education, 342 U.S. 485, 492, 72 S.Ct. 380, 384, 96 L.Ed. 517 (1952) in passing on the constitutionality of a New York statute relating to employment in the school district:

"It is clear that such persons have the right under our law to assemble, speak, think and believe as they will. [American] Communications Assn. [etc.] v. Douds, 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925]. It is equally clear that they have no right to work for the State in the school system on their own terms. United Public Workers [etc.] v. Mitchell, 330 U.S. 75 [67 S.Ct. 556, 91 L.Ed. 754]. They may work for the school system upon the reasonable terms laid down by the proper authorities of New York. If they do not choose to work on such terms, they are at liberty to retain their beliefs and associations and go elsewhere. Has the State thus deprived them of any right to free speech or assembly? We think not."

On the issue of whether plaintiff was deprived of due process of law, the Court of Appeals for the District of Columbia in Bailey v. Richardson, supra, 182 F.2d at page 57 had this to say:

"It has been held repeatedly and consistently that Government employ is not 'property' * * * the due process clause does not apply to the holding of a Government office."

The executive branch of the Government has the power to appoint

and the power to remove. As Bailey aptly stated at page 58:

"No function is more completely internal to a branch of government than the selection and retention or dismissal of its employees. * * * In the absence of statute or ancient custom to the contrary, executive offices are held at the will of the appointing authority, not for life or for fixed terms. If removal be at will, of what purpose would process be? To hold office at the will of a superior and to be removable therefrom only by constitutional due process of law are opposite and inherently conflicting ideas. Due process of law is not applicable unless one is being deprived of something to which he has a right."

We are in agreement with this reasoning. See also, Matter of Hennen, 13 Pet. 230, 38 U.S. 230, 10 L.Ed. 138 (1839); Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); Levine v. Farley, 70 App.D.C. 381, 107 F.2d 186 (1939), cert. denied 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519.

The only specific case cited by plaintiff in support of his contention is Bomar v. Keyes, 162 F.2d 136 (2 Cir. 1947), cert. denied 332 U.S. 825, 68 S.Ct. 166, 92 L. Ed. 400, rehearing denied 332 U.S. 845, 68 S.Ct. 266, 92 L.Ed. 416. In Bomar a probationary teacher was caused to be discharged by a principal for the teacher's absence from duty while serving on a federal jury. The Court in ordering a reinstatement of the dismissed complaint held that a cause of action was stated as plaintiff had a right to serve on a jury and that a dismissal under color of law for that reason gave ground for a proceeding under the Civil Rights Section. The case held further that neither the proceedings before the Commissioner of Education nor the action in the New York courts was a bar to the maintenance of the action. In short, the Court held that Bomar had a legal right to serve on a federal jury, and Keyes by causing her discharge caused her a pecuniary loss. The Court, however, said at p. 139:

"We do not mean to suggest that a teacher may absent herself from her work indefinitely, and serve on a jury without regard to her duty: i. e., that she may choose her own time or stay away as long as she pleases. Certainly there are 'reasonable' limits to the exercise of her privilege; * * * *"

The Bomar case is clearly distinguishable from this case. At issue in Bomar was the denial of an absolute right to serve on a federal jury. The exercise of this right would not abnormally disrupt agency functions or destroy the necessary chain of command between a supervisor and employees under his supervision. Here plaintiff asserts a right to make any criticism or advance any charges he deems warranted and remain absolutely secure in his position. He wants the Constitution to serve as a personal protection in this dispute between himself and his superiors. It was not intended to, nor does it serve that function.

We have discussed and found without merit plaintiff's claim of deprivation of his right of free speech and his denial of due process. His contention of impairment of contract in violation of Article I, Section Ten of the Constitution is likewise without merit. We fail to see any connection, even casual, between the factual situation of this case and the constitutional provision prohibiting the state from passing any law impairing the obligation of contracts. There is no showing in this case that plaintiff ever had a contract of employment, and even if he did have, the state of Minnesota has not passed a law impairing that contract.

Therefore, we believe there is no basis for a claim upon which relief can be granted. The fact of plaintiff's misconduct in office was established by the state proceedings. These proceedings are *res judicata* of the issue and cannot be relitigated in the federal courts. There has been no showing that plaintiff's federal constitutional rights have been infringed upon or violated. The judgment of the District Court dismissing the amended complaint is affirmed.