375 So.2d 1102 (1979)
Sondra WEISBROD, Appellant,
v.
FLORIDA CAREER SERVICE COMMISSION and Department of Health and Rehabilitative Services, Appellees.
No. KK-363.
District Court of Appeal of Florida, First District.
September 20, 1979.
Rehearing Denied November 6, 1979.
*1103 Jerry G. Traynham, of Patterson & Traynham, Tallahassee, for appellant.
Douglas E. Whitney, Orlando and Jim Smith, Atty. Gen. and David K. Miller, Asst. Atty. Gen., for appellees.
LARRY G. SMITH, Judge.
We must determine whether appellant's verbal conduct, unconnected with her employment, was properly found to constitute "just cause" for her dismissal from the Department of Health and Rehabilitative Services. We find that the Career Service Commission erred in so finding and reverse.
Appellant was employed by the Department of Health and Rehabilitative Services as a social worker and was serving in that capacity at the time of her suspension and the dismissal. She received a suspension letter dated June 17, 1977 from the subdistrict administrator notifying her of her suspension pending the outcome of investigation of a complaint from the Brevard County Sheriff's Department. By letter dated June 29, 1977, the administrator notified appellant of her dismissal "for conduct unbecoming a public employee and inability to perform assigned duties". Her appeal to the Career Service Commission resulted in entry of the opinion and order of the Commission finding that the agency "had good and just cause to take disciplinary action against the appellant", and it was ordered that her suspension and dismissal be sustained.
This cause is before us for review based entirely upon the written order of the Commission and various documents and exhibits introduced as evidence in the proceeding below. The Commission determined that the material issues to be decided were:
"Whether the appellant's conduct off-duty on the evening of May 27, 1977, constituted conduct unbecoming a public employee, and whether such conduct rendered the appellant unable to perform assigned duties as a Protective Services Worker." (Commission's Order June 7, 1978)
The events of May 27, 1977 which lead to appellant's discharge may be accurately summarized from the Commission's order and the documents in evidence. On the evening of May 27, 1977 at approximately 11:30 p.m., appellant was stopped for a "routine check"[1] by a Cape Canaveral police officer as she was driving home from a dinner engagement. The officer determined that appellant was the subject of an outstanding bench warrant issued for her arrest and the Brevard County Sheriff's Department was notified. Within a short period of time, the appellant's automobile *1104 was surrounded by at least four officers in law enforcement vehicles, one of whom produced the bench warrant for her arrest. After it became apparent to appellant that she would be arrested on the bench warrant, and in all probability would spend the night, and perhaps the weekend in jail, she became somewhat hysterical and distraught. While in this emotional state she expressed her opinion of state government collectively and of the Brevard County Sheriff's Department separately.
No useful purpose would be served here by repeating the exact words used by appellant. It is sufficient to say that her choice of language could easily be characterized as profane and indecent, and that certain of the words used would probably head the list of words not spoken in polite company.
Upon being escorted to the Sheriff's Department appellant again addressed herself to the Sheriff's Department in general, demonstrating anew her fluidity of expression in terms vulgar and profane.[2] These outbursts were witnessed by a citizen of the county who was authorized by the Sheriff to accompany the deputy sheriff who brought appellant in, observing his duties and performance. The Commission also found that appellant made an obscene gesture toward this citizen.
Although appellant identified herself as a state employee to the arresting officer, it is clear, as found by the Commission, that appellant was not on duty or performing any work function for the agency. At no time on this occasion did she act on behalf of the State of Florida or the agency, nor did she purport to act in the capacity of a public employee. There was no evidence of harassment or other adverse action on the part of the deputy sheriff in the execution of the bench warrant and arrest of the appellant.
Following this incident a report was made by the Sheriff of Brevard County by letter addressed to appellant's supervisor.[3] To the letter were attached various reports and documents including statements from the deputy sheriff, his superior officer, another deputy, and the citizen observer.
Based upon the series of events which have been substantially described in the foregoing paragraphs, the Commission found that the report of the incident by the Sheriff of Brevard County indicated to the Commission "that he was concerned", and "that his department's relationships toward the agency, the appellant, or the State of Florida might be affected"; that the agency by a preponderance of the evidence had sustained its burden of proof and had established the material allegations of the letter of dismissal; and that the evidence submitted by appellant was insufficient to establish any valid basis for overturning the agency's decision to take the disciplinary action against her. In addition, and most significantly, in paragraph 22 the Commission found as follows:
"22. No substantial evidence of any kind was presented by any party, which would be admissible over objection in a civil proceeding, that any conduct engaged in on May 27, 1977, by appellant, had any adverse impact upon the agency or the appellant's work performance. However, the Commission is of the opinion that it would have, had the appellant continued to work for the agency." (Order June 7, 1978) (emphasis supplied)
Appellant relies for reversal upon her contentions that the appellee, Career Service Commission, committed error in failing to properly and adequately rule upon all of appellant's proposed findings of fact; that the Commission committed error in failing to find as a matter of law that the facts did not constitute "just cause" for appellant's *1105 dismissal, and in applying an improper standard of proof to the case; that no competent evidence supports the rationale upon which the Commission chose to uphold appellant's dismissal; and alternatively, that the Commission's order failed to explicate the Commission's rationale for non-rule policy, and failed to expose and elucidate its reasons for discretionary action.
We find there is some merit in all of appellant's contentions. However, we focus primarily upon the question whether, as a matter of law, the actions of appellant upon which her dismissal was based are sufficient to constitute "just cause" for her dismissal. We hold that agency discretion under Section 120.68(12), Florida Statutes, does not extend to the discharge of appellant under the circumstances of this case, based upon opinion and supposition unsupported by any factual basis, that her acts may in the future affect her ability to carry out her assigned duties.
There is some basis for appellant's complaint that the Commission erred in failing to properly and adequately rule upon her proposed findings of fact. See McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977); Forrester v. Career Service Commission of Florida, 361 So.2d 220 (Fla. 1st DCA 1978); and Stuckeys of Eastman, Georgia v. Department of Transportation, 340 So.2d 119 (Fla. 1st DCA 1976). Specifically, appellant requested and submitted proposed written findings that the bench warrant (issued for her nonappearance) which was the basis for her arrest and detention, was issued in error by the court, and that she was never properly notified to appear in court on the charge of having an expired inspection sticker on her automobile; that the charge of driving without a valid driver's license lodged against her on the evening in question was dismissed a few days after the events of May 27, 1977 (proposed finding paragraph 16); that no incident of this character had happened to appellant at any time before or after the May 27 event; that she had never before been arrested for any reason; and that before she left the Sheriff's Department on that evening she apologized to the other officers present for becoming hysterical and emotionally overwrought.
One of the bases for appellant's dismissal was "conduct unbecoming a public employee". This being so, there is no reasonable or rational explanation why the Commission failed to dispose of these proposed findings, since the alleged "conduct" of the appellant was at the heart of the controversy. We therefore reject the argument found in the Commission's brief that failure to accord any weight whatever to these circumstances can be excused on the grounds that they are "immaterial or irrelevant". See Forrester v. Career Service Commission of Florida, supra.
Appellee Career Service Commission in its brief urges us to affirm its decision on the grounds that the public may demand high standards of conduct from government employees, and may dismiss employees who "embarrass their agencies", or whose dismissal is necessary "to maintain the morale and reputation of the department". Appellee cites Kennett v. Barber, 31 So.2d 44 (Fla. 1947), and City of Miami v. Kellum, 147 So.2d 147 (Fla. 3rd DCA 1962). Neither the cases cited nor appellee's argument are appropriate. There is no finding that appellant's conduct in this instance did "embarrass" the agency, nor is there any finding that her dismissal was necessary "to maintain the morale and reputation of the department". There is likewise no finding that appellant was guilty of misconduct which "hinders its [the Department's] program".[4] To the contrary, the express finding *1106 of paragraph 22 of the order that there was "no substantial evidence of any kind ... that any conduct engaged in on May 27, 1977, by appellant, had any adverse impact upon the agency or the appellant's work performance", effectively disposes of these contentions.[5]
It must be remembered, also, that the charges against which appellant was required to defend were that she was guilty of "conduct unbecoming a public employee", and whether her conduct rendered her "unable to perform assigned duties as a protective services worker". We find the record in this case fatally lacking in findings of fact from which a conclusion supporting either of these charges could be sustained.
In Kennett v. Barber, supra, the court held that the City Manager and Chief of the Fire Department and the Personnel Board of a city, clothed with authority by law to determine what constitutes "conduct unbecoming a city employee", properly exercised their authority in discharging a city fireman who got drunk, seized the arm of his pregnant wife and threw her to the ground, then beat, bruised and battered a second woman with his fists and feet. The fact that the fireman was off duty when the acts were committed was immaterial. Justice Terrell, who authored the opinion for the court, said that in determining whether conduct justifies discharge of the employee,
"... the City cannot act on an arbitrary or capricious judgment, neither must it act on a judgment shrouded in the fog of bias and skepticism. Such judgment must above all be one illuminated by the light of truth and justice... ." (Kennett v. Barber, opinion page 46.)
This court subscribes fully to the foregoing observation of Mr. Justice Terrell, as well as the court's application of the rule that no right of an employee rises above the right of a city to promulgate and enforce "as high a standard of social and cultural conduct as its people want", which cannot be upset by the court "when the record reveals nothing more than an orderly attempt to enforce a reasonable standard of conduct on the part of city employees". (emphasis added; opinion page 47) We think the emphasis applicable here is upon the phrase "reasonable standard of conduct". We see a vast difference between drunkenness and assault and battery upon a wife and another woman, for which there could be no reasonable justification, and the utterance of meaningless expletives (even though vulgar and profane) by a woman arrested and hauled into jail in the middle of the night upon a warrant issued upon administrative error, with the attendant anxiety and distress accompanying the realization that without the means to post $50.00 bail, she might be required to spend the night and perhaps the weekend in jail.
We see not the remotest resemblance between appellant's case and the facts in City of Miami v. Kellum, supra. In that case a police officer of the City of Miami was arrested and formerly charged with two counts of entering without breaking and grand larceny. He was convicted on both counts, but his conviction was reversed on appeal for procedural errors in the trial having no bearing upon an adjudication of his innocence or guilt. Meanwhile, he had been suspended from duty and pending appeal from his conviction, he had been granted a continuance on his suspension hearing by the Civil Service Board upon condition that he waive any right to salary and other emoluments of office during pendency of the appeal. The case simply held that his waiver of salary was effective, and that he was not entitled to be considered for promotion to lieutenant during the effective period of that waiver. The fact that he was reinstated after disposition of the criminal case was immaterial to the decision. The court appropriately observed that there is no necessary correlation between the outcome of criminal proceedings for alleged *1107 misconduct in office and discharge of a police sergeant on the same grounds as included in the criminal charges.
All else failing, appellee suggests in its brief that although appellant was not charged or prosecuted under any criminal statute, it is conceivable that she "could have been" prosecuted for disorderly conduct, or for verbal abuse of a police officer in the line of duty, citing City of St. Petersburg v. Waller, 261 So.2d 151 (Fla. 1972), cert. den. 409 U.S. 989, 93 S.Ct. 312, 34 L.Ed.2d 256 (1972), and Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Although we do not pass upon the guilt or innocence of one who has been neither charged nor convicted, we have examined the cases cited by appellee and other cases, and can find no support for appellee's assumption that appellant's conduct approached that which might even provisionally be described as "criminal". Initially, we observe that the City of St. Petersburg case cited by appellee held that the "verbal abuse" prohibitions contained in the City's ordinance could be constitutionally upheld only if construed as "strictly limited to words having a direct tendency to cause acts of violence, the `fighting words' recognized by Chaplinsky as one step away from violence". Further, said the court:
"Mere displeasure, annoyance or resentment is not sufficient. As we have indicated, the words, taken under the circumstances spoken, must interfere with the officer in the performance of his duty, primarily through incitement to violence and breach of the peace." (St. Petersburg v. Waller, pages 158, 159).
The St. Petersburg case dealt with verbal abuse and profanity directed by defendant to police officers in the midst of what could accurately be described as a "mob scene" on the streets of St. Petersburg, and the court found that defendant's words were calculated to, and did, in fact, interfere with the officers in the performance of their duty. A crowd was attracted to the scene and incited to violence against the officers. Furthermore, the court specifically pointed out that the acts prohibited by the ordinance were not "primarily concerned with offense to the sensibility of individual police officers", but rather with the "reaction of bystanders, friends, family and members of the public who might be incited to action, either against the officer, or against the person speaking the words". (opinion page 156).
By contrast with the City of St. Petersburg, case, in appellant's situation there was no crowd, no mob scene, no disturbance, no melee, no threats of action, force, or resistance to the authority of the police. In sum, no one was upset or aroused other than appellant herself and with good cause.
As to appellee's suggestion that appellant might have been guilty of disorderly conduct, we refer also to the case of White v. State, 330 So.2d 3 (Fla. 1976). That case held the statute governing breach of the peace and disorderly conduct (Section 877.03, Florida Statutes) constitutional only when construed (with respect to verbal conduct) as limited in its application to circumstances in which by the manner of their use, the words invade the rights of others to pursue their lawful activities, or by their very utterance, they inflict injury or tend to incite an immediate breach of the peace. In determining the narrow line between constitutionally protected speech and that which is unprotected, it is imperative to consider the circumstances in which the words were uttered. The conduct of defendant in the White case "passed the bounds of speech and reached the point where it was disorderly". The court pointed out that in order to be sufficient for conviction more must be shown than that the words were offensive to a part of the general population. (White v. State, page 7).
Finally, to dispel any notion that appellant's conduct approached that deemed criminal reference should be made to Brown v. State, 358 So.2d 16 (Fla. 1978), in which the court held that Section 847.04, Florida Statutes, proscribing the use of "profane, vulgar and indecent language", etc., is unconstitutional because of the absence of any provision limiting its application *1108 to "fighting words directed to another as mandated by Chaplinsky v. New Hampshire". Similarly, Section 847.05, proscribing the use of "indecent or obscene language", etc., has been held unconstitutional as overbroad, in that the statute does not articulate a boundary between "expression which is protected and expression which is not". Spears v. State, 337 So.2d 977 (Fla. 1976).
Unless it is shown that appellant's expressions interfered with the performance of her duties or the operation of her department, she is entitled to protection of the First Amendment. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).[6] On this point we have considered London v. Florida Department of Health and Rehab. Serv., 313 F. Supp. 391 (D.C.N.D.Fla. 1970). There, the District Court found that plaintiff's transfer as a social worker from one county to another, and his subsequent dismissal, were not motivated by racial prejudice nor did this violate his First Amendment rights. In so holding, the court cited Jenson v. Olsen, 353 F.2d 825 (8th Cir.1965), holding:
"`The First Amendment guarantees free speech and assembly, but it does not guarantee Government employ. * * * There is no basic right to Government employ, any more than there is to employment by any other particular employer.'"
That court further found, however, that the evidence justified his transfer because of his engaging in community controversies, contrary to regulations, that adversely affected his effectiveness and impaired the work of the Board. These requirements, said the court, were "reasonable".
On appeal to the Fifth Circuit, although the judgment adverse to plaintiff was upheld, on the matter of entitlement of a public employee to protection of the First Amendment the trial court was found to be in error, since such employees are entitled to its protection. Said the court:
"Moreover, we cannot agree with the reasoning of the District Court which seems to hold that since government employment is a mere privilege granted by the State, public employees are of a lesser breed when it comes to the protection of their First Amendment rights. In Pickering v. Board of Educ., 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, a case not cited by the court below, the Supreme Court completely put to rest such outgrown shibboleths to which even Justice Oliver Wendell Holmes, not a jurisprudential dovecote, once ascribed. Precursive as he generally was, Justice Holmes simply did not anticipate the First Amendment's coalescent embrace of all citizens. The district court was also in error in disregarding this embrace." . . London v. Florida Department of Health and Rehab. Serv., 448 F.2d 655 (1971), page 657).
Having given careful consideration to the briefs and arguments we hold that mere words that might have offended the sensibilities of the deputy sheriff, the observer, and possibly other officers within hearing, without more, cannot be the precipitating cause of discharge from employment of an off-duty state employee without a positive and unequivocal showing of a connection between that conduct and some legitimate public interest that would be detrimentally affected by it.
It is fundamental that under our system of laws one is required to yield to the superior authority of police officers under all except the most unusual circumstances. It must be freely acknowledged that every citizen should accord a large measure of respect to our law enforcement agencies, and to officers of the law individually while in the performance of their duties. However, every wearer of a badge is not thereby elevated to the status of the Deity, and a citizen is not required to shout "Hallelujah" when he suffers the indignity of being taken into custody for some cause not immediately apparent to him.
*1109 Furthermore, although we are confident that the Commission never intended such an interpretation of its order, we are repelled by the notion implicit in the result reached in this case that one's very livelihood may be placed in jeopardy by a mere chance encounter with another agency of government under circumstances that that individual might be said to "lose favor" with that governmental agency. Upon the possibility, therefore, that the events of May 27 might somehow be considered as the probable cause of some friction between appellant and the law enforcement agency, we are of the opinion that the existence of some degree of friction and tension between various components of our service and law enforcement agencies is not necessarily a bad thing. Indeed, it would seem that a certain amount of such tension is inevitable owing to the often apparently conflicting duties and responsibilities of these agencies.
On the whole we think the Commission's order reflects a rather commendable and forthright effort to set forth the basis for appellant's dismissal, but we are compelled to hold that the collective intuition of the members of the Commission is not an acceptable substitute for proof of appellant's demonstrable inability to perform her assigned tasks.
The order appealed from is therefore reversed, and it is ordered that appellant be reinstated to her employment. Appellant's motion for attorney's fees and costs is granted by separate order.
MILLS, C.J., and ERVIN, J., concur.
NOTES
[1] The record does not furnish further details of this "routine check", but we observe that the practice of wholly discretionary routine stops of automobiles without an "articulable and reasonable suspicion" by the officer that the motorist is unlicensed or the vehicle unregistered has recently been held an unreasonable seizure under the Fourth and Fourteenth Amendments, in the absence of other justification for the seizure of the vehicle or an occupant for violation of the laws. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (opinion March 29, 1979); Keenan v. State, 372 So.2d 1012 (Fla. 1st DCA, Case No. LL-156, opinion July 12, 1979).
[2] The Commission's order finds: "All of these conversations at the Sheriff's Department were with a third person by telephone" (order, paragraph 15). The Commission rejected the Department's requested finding No. 6, which included "using profanity directly to the Deputy Sheriff', and "The Appellant, while talking to a third person on the telephone, in a loud voice, and while looking directly at the Deputy Sheriff, did make a profane threat to said Deputy Sheriff".
[3] The letter itself relates no facts and contains no recommendations or conclusions.
[4] The Commission rejected the Department's requested Conclusion of Law no. 2, which reads as follows: "2. Although the Appellant was understandably upset by virtue of her being arrested, the results of her conduct did affect her credibility in the future with a police agency with which she would have to work in her position". The only conclusion as to any adverse consequences of her conduct is the finding that although there was no evidence that her conduct had any adverse impact upon the agency or appellant's work performance, "... the Commission is of the opinion that it would have, had the appellant continued to work for the agency." (order, paragraph 22)
[5] See footnote 4.
[6] The Commission rejected the Department's requested Conclusions of Law no. 1 which reads as follows: "1. Although appellant does have, as an individual, a right of free speech, that right as affecting her employment was exceeded by her conduct."