Edward P. FITZGERALD,
Plaintiff–Appellant,

v.

Gus O. NATIONS, Earl J. Gates, Frank C. Bick, Harry T. Bussmann, Jr., and Hugh Scott, Jr. Comprising the Board of Police Commissioners, St. Louis County, Missouri, Defendants–Respondents.

No. 41790.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 28, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1980.

Application to Transfer Denied
Feb. 9, 1981.

London, Greenberg & Fleming, C. John Pleban, St. Louis, for plaintiff–appellant.

Andrew J. Minardi, Clayton, for defendants–respondents.

SMITH, Presiding Judge.

Edward Fitzgerald appeals from the order of the trial court affirming the action of the St. Louis County Board of Police Commissioners which had in turn affirmed the action of the Superintendent of Police in terminating Fitzgerald as a St. Louis County police officer. We affirm.

The facts which form the basis for the termination are undisputed. Sometime in July, 1976, Fitzgerald posted a notice on the bulletin board in the First Precinct, where he was stationed. The notice took issue with certain comments to the press by Major Bergauer that no "quota system"[1] existed in the First Precinct. It then recited "Well *I'll call Major Bergauer*, the Colonel,

the Police Board, McNary, [the County Supervisor], the Council [St. Louis County Council], any supervisor, or, commandor (sic) a *damn liar* to their *face*, if they tell me that there is no '*quota*' system in the 1st Prct.; and that officers *haven't* and *aren't* punished for not *participating* or *competing*. Fitz." (Emphasis in original).

Captain Long, after consulting with other officers, concluded that inasmuch as the notice was posted in a place where it could be seen by all employees working in the precinct, a response before the employees was necessary. On August 9, 1976, (after Fitzgerald returned from vacation) at the roll call for Fitzgerald's shift, Long had the notice read. He then asked if Fitzgerald had written the notice, to which Fitzgerald replied affirmatively. Long then denied that any quota system existed in the precinct. Fitzgerald responded that the Captain was a "damn liar." Long advised Fitzgerald of the seriousness of such a statement to a superior and Fitzgerald evidenced his understanding of that by advising that he was putting his "job on the line." Long repeated his statement that no quota system existed and Fitzgerald again called Long a "damn liar."

On appeal to the Board from the order of the Superintendent terminating Fitzgerald's employment the Board found Fitzgerald guilty of insubordination and of conduct "prejudicial to order and discipline in the Department . . . impair[ing] the efficiency of the same and bringing discredit upon it."

■ On appeal, Fitzgerald raises three alleged points of error. We consider first his contention that his termination was based upon speech protected by the First Amendment, United States Constitution, and was predicated on regulations which are vague and overbroad. Fitzgerald places his reliance upon *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) wherein the court held that termination of a school teacher for

---

1. In the context of this case "quota system" referred to a practice of imposing upon the police officers a quota of arrests or other activities as an acceptable level of performance.

statements contained in a letter to, and published in, a newspaper was a violation of the teacher's First Amendment rights. The court based its conclusion on the fact that the statements were of public concern and were "in no way directed toward any person with whom appellant would normally be in contact in the course of his daily work as a teacher." The statements for which Fitzgerald was terminated clearly were directed toward a person with whom he would normally be in contact in the course of his daily work, and were made in the presence of people with whom both he and Captain Long had to work. While the question of whether a quota system was in effect in the First Precinct[2] is a matter of public concern, Fitzgerald was not terminated for his expressions concerning that matter. He was terminated because he called the Captain a "damn liar." That was a vitriolic personal attack based upon Fitzgerald's attitude that anyone holding a different viewpoint from his own is not only incorrect but mendacious. The First Amendment does not protect one from the consequences of such speech, including termination of public employment, particularly where it occurs in a military or quasi–military organization such as the police force. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Jenson v. Olson,* 353 F.2d 825 (8th Cir. 1965); *Magri v. Giarrusso,* 379 F.Supp. 353 (D.C.La.1974); *Milani v. Miller,* 515 S.W.2d 412 (Mo.1974); *Vorbeck v. McNeal,* 560 S.W.2d 245 (Mo. App.1977); *Brown v. Alberda,* 579 S.W.2d 718 (Mo.App.1979).

◼ Nor do we find the regulations vague or overbroad. Much has been written on this subject matter, both by the United States Supreme Court and the Missouri Courts. It is unnecessary to repeat what has been previously written. It is sufficient to say that regulations similar and even less definite than those before us have been upheld against charges of vagueness and overbreadth particularly where, as here, the conduct charged clearly falls under the regulations, as was recognized by Fitzgerald when he stated he was putting his job on the line. *See Arnett v. Kennedy, supra; Milani v. Miller, supra; Giessow v. Litz,* 558 S.W.2d 742 (Mo.App.1977); *Miller v. Whaley,* 581 S.W.2d 916 (Mo.App.1979).

◼ Fitzgerald's next point is that he was denied a fair hearing because the Board refused to admit into evidence a grand jury report on the Department's system of evaluation which Fitzgerald contends supports his position that a quota system existed. For reasons which we do not fully comprehend, the great majority of the testimony in this case before the Board dealt with the presence or absence of a quota system in the First Precinct. The Board found that no quota system existed in that precinct but specifically held that its action in upholding Fitzgerald's termination was not based upon that finding but rather upon the undisputed actions of Fitzgerald in twice calling Long a "damn liar." The evidence which Fitzgerald contends should have been admitted was clearly irrelevant to the charges for which he was terminated. In addition, it was (as were the petitions from other policemen and citizens which the Board also refused to admit) the rankest form of hearsay. We find no error in the Board's actions in refusing to admit this material into evidence.

Fitzgerald's final point is that the evidence fails to establish sufficient grounds for termination because (1) there was no evidence that his statements were prejudicial to good order and discipline of the department or impaired the efficiency of the department and (2) there was no evi-

2. We need not and do not decide whether a "quota system" existed. There was evidence that an evaluation system was utilized in the precinct and that that system included numerical rating of the police officers based in part upon their reportable activities including arrests and citations. Whether this was a "quota system" depends entirely upon one's definition of that term.

dence of contempt or disrespect toward Long because the verbal exchange was in the nature of symbolic speech initiated by Long.

As to the first point, there was evidence by several officers that Fitzgerald's statements impaired the efficiency of the precinct and was prejudicial to discipline and good order, particularly as it affected the newer officers present at the roll call. In view of the circumstances and Fitzgerald's actions, it would seem that no evidence would have been required for the conduct speaks for itself. Discipline cannot be maintained in any organization, particularly not a quasi–military one, if employees can, without repercussion, call their supervisors "damn liars." *See Jenson v. Olson, supra; Magri v. Giarrusso, supra.*

As to the second point, there was nothing "symbolic" about this speech. Nor was the verbal exchange initiated by Long. It was initiated by Fitzgerald when he placed his notice on the precinct bulletin board. Fitzgerald, having hurled down the gauntlet, could expect Long's response as a necessary action of a superior officer confronted with an attack upon his policies. Fitzgerald chose to place his complaints before the employees in the precinct and he is in no position to complain that his assertions were challenged in the same forum.

Judgment affirmed.

SATZ and SIMON, JJ., concur.