**Mario Perez SANTOS,
Plaintiff-Appellant,**

v.

**MIAMI REGION, U. S. CUSTOMS SERVICE, et al., Defendants-Appellees.**

**No. 80–1403.**

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1980.

Decided March 4, 1981.

Mass.Acts, 1971 ch. 941, Daniel Wallace's accident occurred in 1971 so we apply the law as it existed prior to its amendment.

22

William Harness, Atlanta, Ga., with whom Lawrence K. G. Poole, Decatur, Ga., on brief, for plaintiff-appellant.

Mary A. McReynolds, Atty., Civ. Div., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Washington, D. C., Raymond L. Acosta, U. S. Atty., San Juan, P. R., and Anthony J. Steinmeyer, Atty., Civ. Div., Dept. of Justice, Washington, D. C., on brief, for defendants-appellees.

Before CAMPBELL and BOWNES, Circuit Judges, and HOFFMAN,* District Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant Mario Perez Santos appeals a decision of the district court upholding on summary judgment his discharge from the United States Customs Service (Customs). The issue presented on appeal is whether the Federal Employees Appeals Authority properly ruled that the discharge did not violate appellant's first amendment rights and was not arbitrary or capricious.

Perez was employed by Customs as a GS–2 telephone operator in the Administrative Division of the Office of the District Director in Puerto Rico. On January 11, 1977, the Director of the Administrative Division informed Perez that he was to be suspended from work and pay for ten calendar days for violations of the Customs Personnel Manual relating to performance of duty, duty hours, and courtesy towards co-workers. Customs charged that he had on several occasions entertained a female friend at the work place during duty hours, disregarded instructions regarding the scheduling of operators for relief duty at the switchboard, left the switchboard unattended for lengthy periods, took unauthorized leave, verbally abused a co-worker, and locked a co-worker in the switchboard closet against her wishes.

* Of the Eastern District of Virginia, sitting by designation.

Perez neither filed a timely grievance under personnel regulations nor invoked union processes to challenge the proposed suspension. On January 21, 1977, he sent a letter to five customs brokers [1] relative to their supposed written complaints about the telephone service in the Customs agency. Perez wrote that such complaints could be "somewhat dangerous" because they "involved innocent persons who have nothing to do with the internal problems of Customs." He also stated that he had filed a complaint against the Customs Service "in which there was illegal evidence involved," and declared that "lately there have been persons that have participated in this type of bad deeds at Customs and at the Airport Operations Division."

On February 7, 1977, Customs informed appellant by letter of its decision to suspend him. Although Customs described in detail Perez' right of appeal to the Civil Service Commission and his right to file a formal grievance, he did not pursue either avenue. Instead, Perez responded with a letter dated February 15, 1977, which he termed an "informal grievance." Customs answered on February 17, stating that though his informal grievance was "untimely," he could still appeal the suspension to the Civil Service Commission or file a formal grievance within 15 calendar days of the effective date of suspension. Perez did neither.

During the suspension period, Perez distributed a circular to Customs employees, customs brokers, and the general public, charging Customs with manufacturing false charges, and maintaining "phantom writings" and "mysterious archives." He alleged that he was employed in a position below his classification, and unjustly denied promotions. Along with the copies of the circular that he sent to the brokers, Perez included a covering memorandum entitled "Unjust Suspension" which referred to the January 21 letter and to actions of Customs as reflecting "additional examples of discrimination and bad faith."

1. Customs brokers are private businessmen licensed and regulated by the Customs Service who are in daily contact with the agency.

On March 18, 1977, Customs filed removal charges against Perez. Charge I alleged that he had engaged in "criminal, infamous, dishonest, immoral or notoriously disgraceful conduct prejudicial to the Government," in violation of Customs Personnel Manual, ch. 735, subch. 2, § 1. Charge II alleged that he had acted in a way which, whether or not specifically prohibited, could affect adversely the confidence of the public in the integrity of government, in violation of Customs Personnel Manual, ch. 735, subch. 2, § 2. Charge III alleged that Perez had conducted his relationships with other employees in a manner that caused dissension or discord among the employees and disrupted the conduct of official business, in violation of Customs Personnel Manual, ch. 735, subch. 2, § 5. Customs supported its charges with specifications of Perez' allegedly proscribed behavior. Following an evaluation of appellant's written responses, Customs notified him of his removal in a letter dated May 10, 1977. Perez appealed this decision to the Federal Employees Appeals Authority (FEAA) of the Civil Service Commission (presently the Merit Systems Protection Board). At the hearing before the FEAA, Perez sought to prove that the charges he had circulated through letters and flyers were true or that he had reason to believe that they were true.

The FEAA issued its ruling on May 5, 1978, affirming Customs' decision to remove Perez on Charges II and III. It found no evidence to sustain Charge I that Perez' conduct was "criminal, infamous, immoral, or notoriously disgraceful," and prejudicial to the government. The FEAA then considered whether Perez' activities were constitutionally protected or not, and, if they were not so protected, "whether the Customs Service action or removal was arbitrary, capricious or unreasonable . . . or if his removal was for such cause that will promote the efficiency of the Service." The FEAA rejected Perez' constitutional claims,[2] determining that he

> directed extremely broad, vague accusatory remarks to individuals who were powerless to provide a remedy. This action cannot be construed as an attempt or petition to correct alleged wrongdoing by bringing facts to an appropriate official or group of officials.

Moreover, it found that Perez' actions could "only . . . have an adverse effect upon the confidence of the public . . . in the integrity of the Customs Service." His behavior "foment[ed] an aura of discord and dissension or other disharmonious relationships" among Customs service workers. The FEAA also determined that the actions were "made with malice and for no other reason."

Further, the FEAA found that Customs' actions was not arbitrary or capricious, or unreasonable; the "preponderance of the credible record evidence" supported the Customs Service decision to remove Perez.

The case then moved to the district court where, upon cross-motions for summary judgment, the decision of the FEAA was affirmed. The court found that Perez' first amendment rights had not been violated, that the FEAA decision was not arbitrary or capricious, but was supported by substantial evidence. In reaching the latter conclusion, it determined, contrary to the FEAA, that Customs had substantiated Charge I.

On appeal, Perez argues that the district court erred in deciding that the Custom Service did not impinge upon his first amendment rights, and in finding that his removal was not arbitrary or capricious. We review the FEAA decision to the extent necessary to determine whether it was arbitrary or capricious, or otherwise unconstitu-

---

2. In rejecting Perez' first amendment claims, the FEAA cited *Swaaley v. United States*, 376 F.2d 857, 180 Ct.Cl. 1 (1967), and *Jenson v. Olson*, 353 F.2d 825 (8th Cir. 1965). In *Swaaley*, the court held that a petition to redress grievances, which included a statement that was defamatory to a public official, but was not shown to have been willfully false or made with willful disregard of its truth or falsity, was protected. The court in *Jenson* determined that when speech is "disruptive of the proper functioning of the public's business the privilege of governmental employment may be withdrawn," without denying freedom of speech. 353 F.2d at 828.

tional. *Doe v. Hampton*, 566 F.2d 265, 271 (D.C.Cir.1977).

In examining the constitutional arguments, we begin with the general premise that government employees do not lose their first amendment rights upon entering public service. The government cannot impose unreasonable restrictions on constitutional liberties as a condition for employment. *Keyishian v. Board of Regents*, 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–685, 17 L.Ed.2d 629 (1967). While recognizing the rights of employees to comment upon matters of public concern, this court has stated that such rights are "[s]ubject to the state's paramount interest as an employer in promoting the efficiency of the public services it performs through its employees." *Rosado v. Santiago*, 562 F.2d 114, 117 (1st Cir. 1977). Earlier, the Supreme Court declared that

> the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the . . . [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Although the Court in *Pickering* did not deem it appropriate or feasible, given the enormous variety of fact situations, to set forth a general standard against which all statements may be judged, it did provide some guidelines that aid us here. In those circumstances in which the employee's critical comments "on matters of public concern," *id.* at 570, 88 S.Ct. at 1735, are "substantially correct," *id.*, they cannot "furnish grounds for dismissal." *Id.* Statements of public concern which are found to be false are protected unless they can be shown to have interfered with the employee's performance or the regular operation of his governmental agency. *Id.* at 572–73, 88 S.Ct. at 1736–37.

Criticisms made with malice or with knowledge that they contained falsehoods may not be protected. *Id.* at 574–75, 88 S.Ct. at 1737–38. Removal may be justified in situations involving the maintenance of discipline by an immediate superior, harmony among co-workers, or the relationship of trust and confidence necessary to the proper functioning of the government agency. *Id.* at 569–70, 88 S.Ct. at 1735.

Turning to the case at hand, the FEAA reasonably concluded that appellant's activities were disruptive and fomented discord among his co-workers. Were Perez seriously engaged in an effort to redress the alleged wrongs he had suffered, he could reasonably have been expected to make use of the channels which could have resolved the dispute. He could have protested his suspension informally, either orally or in writing, to his superior, or he could have filed a grievance, or appealed to the Civil Service Commission. Instead, Perez chose to direct his letter-writing campaign to those who were not in a position to affect his employment—customs brokers, co-workers, and the general public.

The character of appellant's activities also undermines his first amendment claims. His letter-writing and leafletting efforts did not identify a particular problem needing correction. He did not, for example, allege specific inefficiencies affecting the public welfare, *see Rosado v. Santiago*, 562 F.2d at 116, or object to particular decisions which he thought were injurious to clients of the institution or agency, *see Pilkington v. Bevilacqua*, 439 F.Supp. 465 (D.R.I.1977), *aff'd* 590 F.2d 386 (1st Cir. 1979). Rather, Perez made allegations having to do with "mysterious archives" and "phantom writings." Such speech involves matters of little, if any, public concern which might under *Pickering* be deserving of protection. The only effect that Perez' activities could have had was to lessen respect and confidence in the integrity of the Customs Service. The balance definitely tips in favor of the state as an employer promoting the efficiency of the public services. Based on its findings, the FEAA reasonably concluded that Perez' speech was not constitutionally protected.

██ We turn to appellate's contention that the Customs decision was arbitrary or capricious. Our view leads us to determine that the district court erred in its assessment of Charge I. Although Perez' removal can be justified for other reasons, we cannot find any basis for overturning the decision of the FEAA that appellant had not "engaged in criminal, infamous, dishonest, immoral or notoriously disgraceful conduct prejudicial to the Government" within the meaning of Customs Personnel Manual, ch. 735, subch. 2, § 1. Appellant argues that if Charge I is dismissed, the other charges should also be dismissed, given that the evidence supporting them and Charge I is virtually identical. This does not follow. Conduct that could affect adversely the confidence of the public in the integrity of the government (Charge II), and conduct that causes dissension among employees disrupting the carrying on of official business (Charge III) does not, as the facts here illustrate, have to be criminal, infamous, dishonest, immoral or notoriously disgraceful. The FEAA decision was not arbitrary or capricious and, indeed, is amply supported in every respect.

*Affirmed in part, reversed in part.*